**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FRANKLIN JONES | : | |
| 3710 Hayes Street, N.E. | : | |
| Apartment 304 | : | |
| Washington, D.C. 20019 | : | |
| | : | |
| and | : | |
| | : | |
| ERICA LUSK | : | |
| 1220 Blair Mill Road | : | |
| Apartment 304 | : | |
| Silver Spring, Maryland 20910 | : | |
| | : | |
| and | : | |
| | : | |
| KERI RASMUSSEN | : | |
| 13029 Old Stage Coach Road | : | |
| Apartment 2718 | : | |
| Laurel, Maryland 20708 | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Case No.: _____ |
| | : | |
| THE DISTRICT OF COLUMBIA | : | |
| John A. Wilson Building | : | |
| 1350 Pennsylvania Avenue, NW | : | |
| Washington, D.C. 20004 | : | |
| | : | |
| serve: | : | |
| | : | |
| Anthony A. Williams | : | |
| Executive Office of the Mayor | : | |
| The District of Columbia | : | |
| 1350 Pennsylvania Avenue, NW | : | |
| Washington, D.C. 20004 | : | |
| | : | |
| Arabella A. Teal, Esquire | : | |
| Corporation Counsel (Interim) | : | |
| The District of Columbia | : | |
| 441 4th Street, NW, Suite 1060N | : | |
| Washington, D.C. 20001 | : | |
| | : | |

1

|                                      |   |
|--------------------------------------|---|
| and                                  | : |
|                                      | : |
| ANTHONY A. WILLIAMS                  | : |
| in his official capacity as          | : |
| Mayor of the District of Columbia    | : |
| 1350 Pennsylvania Avenue, NW         | : |
| Washington, D.C. 20004               | : |
|                                      | : |
| and                                  | : |
|                                      | : |
| CHARLES H. RAMSEY                    | : |
| in his official capacity as          | : |
| Chief Executive Officer of the       | : |
| Metropolitan Police Department       | : |
| 300 Indiana Avenue, NW               | : |
| Washington, D.C. 20001               | : |
|                                      | : |
|                                      | : |
| and                                  | : |
|                                      | : |
| JOHN/JANE DOE                        | : |
| Executive Office of the Mayor        | : |
| The District of Columbia             | : |
| 1350 Pennsylvania Avenue, NW         | : |
| Washington, D.C. 20004/              | : |
| Metropolitan Police Department       | : |
| 300 Indiana Avenue, NW               | : |
| Washington, D.C. 20001               | : |
|                                      | : |
| Defendants                           | : |

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF**

Comes now Franklin Jones, Erica Lusk, and Keri Rasmussen, by and through counsel, Brian C. Malone, Esquire and Mooers & Associates, to state the following Complaint against the District of Columbia, Anthony A. Williams, in his official capacity as Mayor of the District of Columbia, and Charles H. Ramsey, in his official capacity as Chief Executive Officer of the Metropolitan Police Department, an agency of the District of Columbia, and against as-yet-

unidentified persons culpably participating in the events described herein:

## JURISDICTION AND VENUE

1. This action arises under the 4th Amendment to the Constitution of the United States and 42 U.S.C. §1983. The claims herein give rise to federal question jurisdiction pursuant to 28 U.S.C. §1331. In addition, this Court has jurisdiction to render injunctive and declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

2. This Court's personal jurisdiction over the District of Columbia and the officials thereof is manifest.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and (e).

## PARTIES

4. Plaintiff Franklin Jones is an adult resident of the District of Columbia and a citizen of the United States.

5. Plaintiff Erica Lusk is an adult resident of the State of Maryland and a citizen of the United States.

6. Plaintiff Keri Rasmussen is an adult resident of the State of Maryland and a citizen of the United States.

7. Defendant The District of Columbia is a person subject to direct liability under 42 U.S.C. §1983.

8. Defendant Anthony A. Williams is the Mayor of the District of Columbia and, as such, is being sued in his official capacity.

9. Defendant Charles H. Ramsey is the Chief Executive Officer of the Metropolitan Police Department, an agency of the District of Columbia and, as such, is being sued in his official capacity.

10. Defendant(s) John/Jane Doe are persons, as yet unknown, who provided material support and/or participated in the constitutional violations described herein and, when identified, will be sued in their individual and/or official capacity(ies).

## COMMON FACTUAL BACKGROUND

11. On and about the dates of September 27, 2002, September 28, 2002, and September 29, 2002 the World Bank and/or the International Monetary Fund ("WB/IMF") scheduled meetings to take place in the District of Columbia.

12. In advance of such dates certain organizations and associations made public their intention to conduct demonstrations during said meetings in protest of the WB/IMF's policies and practices.

13. In response to the public pronouncements of certain protest groups Defendant Ramsey, with the knowledge, consent, supervision, and/or participation of Defendant Williams and Defendant(s) John/Jane Doe, formulated a premeditated, deliberate strategy to deprive citizens of the United States of certain constitutional rights.

14. This strategy consisted of surrounding gatherings of demonstrators of any significant size, along with any innocent bystanders who happened to also be in the same general area, with a cordon of police officers and, without regard to the specific actions of the persons inside the perimeter of officers, to pre-emptively arrest, *en masse*, all persons inside the perimeter without warning and without affording an opportunity for those persons to voluntarily disperse.

15. This strategy further consisted of knowingly and deliberately charging arrested persons with baseless criminal offenses solely to provide a pretext to delay the release of those persons.

16. On and about the dates of September 27, 2002, September 28, 2002, and September 29, 2002 the Defendants utilized this strategy at various times and locations within the District of Columbia with premeditated, deliberate disregard of the blatant violation of the constitutional rights of hundreds of arrested persons.

17. In September of 2002 the Plaintiffs were all photojournalism students at the Corcoran College of Art and Design in the District of Columbia.

18. Prior to the anticipated beginning of the demonstrations the instructors in Plaintiffs' photojournalism courses suggested that the upcoming demonstrations would afford an opportunity to the students to gain field experience covering a major news event.

## COUNT I
### (Franklin Jones)

19. The allegations contained in Paragraphs 1 through 18 are incorporated herein by reference.

20. At all times referenced in this Count the Defendants acted under color of the laws of the District of Columbia.

21. At or about 10:00 a.m. on the morning of September 27, 2002 Plaintiff Jones arrived at Freedom Plaza in the District of Columbia to take photographs of the demonstration at that location.

22. As he approached, Plaintiff Jones observed a line of police officers standing in a circle around the Plaza.

23. Upon reaching this circle the officers stepped aside so that Plaintiff Jones could enter the Plaza.

24. Upon passing the line of police officers no warning was given to Plaintiff Jones that he would be subject to arrest if he entered the Plaza.

25. For approximately one-half an hour Plaintiff Jones took photographs in the Plaza.

26. As Plaintiff Jones then attempted to leave Freedom Plaza, he was informed by police officers that he was not permitted to leave at that location. He informed the officers that he was a photojournalism student, not a demonstrator and showed the officers his student identification and camera equipment. He was not told why he was not permitted to leave. He was advised to request of other officers to be allowed to leave the Plaza.

27. Plaintiff Jones then attempted to leave the Plaza by requesting of several officers at different locations along the perimeter. He was not permitted to leave nor was he told of the reason why he was being detained within the Plaza.

28. Shortly thereafter a number of Metro buses arrived at the Plaza and the police cordon began to constrict upon the persons detained therein and to herd them toward the buses.

29. Plaintiff Jones was placed under arrest, searched, hand-cuffed, and directed to board a bus.

30. Thereafter, Plaintiff Jones was transported to the Metropolitan Police Department Academy and then to a location apparently in the Third District for further search, booking, finger-printing, and photographing.

31. At approximately 10:00 p.m. Plaintiff Jones was released after posting a $100.00 fine for the offense of Failure to Obey a Police Officer.

32. At no time during the events described above was Plaintiff Jones ordered by the police to disperse or to leave the Plaza.

33. At no time during the events described above was Plaintiff Jones allowed by the police to leave the Plaza despite his repeated requests to be permitted to leave.

34. At no time during the events described above did Plaintiff Jones fail to obey any order given by any law enforcement officer; in fact, he remained within the confined area at the instruction of law enforcement officers and at no time made any effort to disregard any orders or instruction or to resist arrest in any fashion.

35. The arrest of Plaintiff Jones was effected by police officers under the direction and control of the Defendants and in specific execution of the strategy devised by the Defendants.

36. This arrest was made in deliberate and callous disregard of Plaintiff Jones' rights under the First Amendment to the Constitution of the United States to exercise the freedoms of speech, assembly, and of the press; and Plaintiff Jones' right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable search and seizure.

37. As a result of the violation of his constitutional rights Plaintiff Jones suffered pain and physical discomfort, inconvenience, embarrassment, humiliation, emotional and mental distress, and damage to his reputation.

WHEREFORE, Plaintiff Franklin Jones demands judgment against the Defendants, jointly and severally, for compensatory damages in the amount of $500,000.00, punitive damages in the amount of $500,000.00, costs and expenses associated with this action, reasonable attorney's fees as permitted under 42 U.S.C. §1888, injunctive relief directed to the District of Columbia to fully and completely expunge any and all records of the arrest and detention of Plaintiff Jones, declaratory relief that the arrest and detention of Plaintiff Jones was illegal and order that said arrest and detention be recharacterized for all intents and purposes as an "incident", and for any

further relief as this Court deems fair and just.

## COUNT II
### (Erica Lusk)

38. The allegations contained in Paragraphs 1 through 18 are incorporated herein by reference.

39. At all times referenced in this Count the Defendants acted under color of the laws of the District of Columbia.

40. At approximately 7:00 to 7:30 a.m. on the morning of September 27, 2002 a number of demonstrators gathered at Franklin Park near the intersection of 14th and K Streets in the northwest quadrant of the District of Columbia.

41. Shortly thereafter Plaintiff Lusk, in the company of Plaintiff Rasmussen, arrived at the intersection to cover the demonstration.

42. The demonstrators then began to walk along K Street toward Vermont Avenue.

43. Plaintiff Lusk followed along on the edge of the demonstration, taking photographs of the events.

44. At Vermont Avenue, near McPherson Square, a cordon of police officers blockaded the route of the demonstration. A second cordon of officers closed in behind the rear of the demonstrators.

45. At this point in time Plaintiff Lusk was behind the line of officers. Intending solely to obtain photographs of the demonstration, Plaintiff Lusk, along with Plaintiff Rasmussen and several members of the Press, approached the line of officer.

46. The officers stepped aside to permit Plaintiff Lusk and the others to enter the

perimeter. No warning was given that they would be subject to arrest merely for being inside the perimeter.

47. A short while afterward the police cordon, without any order to disperse, began to close upon the demonstrators and bystanders inside the perimeter.

48. Plaintiff Lusk then attempted to pass back through the cordon, explaining that she was a photojournalism student and showing her school identification and camera equipment.

49. Plaintiff Lusk was not permitted to pass through the cordon of police officers.

50. For approximately an hour the police would enter the perimeter and arrest several persons at a time. Throughout this time period Plaintiff Lusk repeatedly requested to be allowed to leave, continually explaining, as above, that she was not a demonstrator.

51. Eventually, Plaintiff Lusk was placed under arrest, hand-cuffed, and directed to board a bus.

52. Plaintiff Lusk was transported to the Metropolitan Police Department Academy for booking, finger-printing, and photographing.

53. At approximately 2:00 a.m. Plaintiff Lusk was released after posting a $50.00 fine for the offense of Failure to Obey a Police Officer.

54. At no time during the events described above was Plaintiff Lusk ordered by the police to disperse or to leave the area of the demonstration.

55. At no time during the events described above was Plaintiff Lusk allowed by the police to leave the area of the demonstration despite her repeated requests.

56. At no time during the events described above did Plaintiff Lusk fail to obey any order given by any law enforcement officer; in fact, she remained within the confined area at the

instruction of law enforcement officers and at no time made any effort to disregard any orders or instruction or to resist arrest in any fashion.

57. The arrest of Plaintiff Lusk was effected by police officers under the direction and control of the Defendants and in specific execution of the strategy devised by the Defendants.

58. This arrest was made in deliberate and callous disregard of Plaintiff Lusk's rights under the First Amendment to the Constitution of the United States to exercise the freedoms of speech, assembly, and of the press; and Plaintiff Lusk's right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable search and seizure.

59. As a result of the violation of her constitutional rights Plaintiff Lusk suffered pain and physical discomfort, inconvenience, embarrassment, humiliation, emotional and mental distress, and damage to her reputation.

WHEREFORE, Plaintiff Erica Lusk demands judgment against the Defendants, jointly and severally, for compensatory damages in the amount of $500,000.00, punitive damages in the amount of $500,000.00, costs and expenses associated with this action, reasonable attorney's fees as permitted under 42 U.S.C. §1888, injunctive relief directed to the District of Columbia to fully and completely expunge any and all records of the arrest and detention of Plaintiff Lusk, declaratory relief that the arrest and detention of Plaintiff Lusk was illegal and order that said arrest and detention be recharacterized for all intents and purposes as an "incident", and for any further relief as this Court deems fair and just.

### COUNT III
### (Keri Rasmussen)

60. The allegations contained in Paragraphs 1 through 18 are incorporated herein by

reference.

61. At all times referenced in this Count the Defendants acted under color of the laws of the District of Columbia.

62. At approximately 7:00 to 7:30 a.m. on the morning of September 27, 2002 a number of demonstrators gathered at Franklin Park near the intersection of 14th and K Streets in the northwest quadrant of the District of Columbia.

63. Shortly thereafter Plaintiff Rasmussen in the company of Plaintiff Lusk, arrived at the intersection to cover the demonstration.

64. The demonstrators then began to walk along K Street toward Vermont Avenue.

65. Plaintiff Rasmussen followed along on the edge of the demonstration, taking photographs of the events.

66. At Vermont Avenue, near McPherson Square, a cordon of police officers blockaded the route of the demonstration. A second cordon of officers closed in behind the rear of the demonstrators.

67. At this point in time Plaintiff Rasmussen was behind the line of officers. Intending solely to obtain photographs of the demonstration, Plaintiff Rasmussen, along with Plaintiff Lusk and several members of the Press, approached the line of officer.

68. The officers stepped aside to permit Plaintiff Rasmussen and the others to enter the perimeter. No warning was given that they would be subject to arrest merely for being inside the perimeter.

69. A short while afterward the police cordon, without any order to disperse, began to close upon the demonstrators and bystanders inside the perimeter.

70. Plaintiff Rasmussen then attempted to pass back through the cordon, explaining that she was a photojournalism student and showing her school identification and camera equipment.

71. Plaintiff Rasmussen was not permitted to pass through the cordon of police officers.

72. For approximately an hour the police would enter the perimeter and arrest several persons at a time. Throughout this time period Plaintiff Rasmussen repeatedly requested to be allowed to leave, continually explaining, as above, that she was not a demonstrator.

73. Eventually, Plaintiff Rasmussen was placed under arrest, hand-cuffed, and directed to board a bus.

74. Plaintiff Rasmussen was transported to the Metropolitan Police Department Academy for booking, finger-printing, and photographing.

75. At approximately 10:00 p.m. Plaintiff Rasmussen was released after posting a $50.00 fine for the offense of Failure to Obey a Police Officer.

76. At no time during the events described above was Plaintiff Rasmussen ordered by the police to disperse or to leave the area of the demonstration.

77. At no time during the events described above was Plaintiff Rasmussen allowed by the police to leave the area of the demonstration despite her repeated requests.

78. At no time during the events described above did Plaintiff Rasmussen fail to obey any order given by any law enforcement officer; in fact, she remained within the confined area at the instruction of law enforcement officers and at no time made any effort to disregard any orders or instruction or to resist arrest in any fashion.

79. The arrest of Plaintiff Rasmussen was effected by police officers under the direction and control of the Defendants and in specific execution of the strategy devised by the Defendants.

80. This arrest was made in deliberate and callous disregard of Plaintiff Rasmussen's rights under the First Amendment to the Constitution of the United States to exercise the freedoms of speech, assembly, and of the press; and Plaintiff Rasmussen's right under the Fourth Amendment to the Constitution of the United States to be free from unreasonable search and seizure.

81. As a result of the violation of her constitutional rights Plaintiff Rasmussen suffered pain and physical discomfort, inconvenience, embarrassment, humiliation, emotional and mental distress, and damage to her reputation.

WHEREFORE, Plaintiff Keri Rasmussen demands judgment against the Defendants, jointly and severally, for compensatory damages in the amount of $500,000.00, punitive damages in the amount of $500,000.00, costs and expenses associated with this action, reasonable attorney's fees as permitted under 42 U.S.C. §1888, injunctive relief directed to the District of Columbia to fully and completely expunge any and all records of the arrest and detention of Plaintiff Rasmussen, declaratory relief that the arrest and detention of Plaintiff Rasmussen was illegal and order that said arrest and detention be recharacterized for all intents and purposes as an "incident", and for any further relief as this Court deems fair and just.

Respectfully Submitted,

MOOERS & ASSOCIATES

                                                  _____
Brian C. Malone, Esquire
(D.C. Bar # 464544)
Thomas R. Mooers, Esquire
(D.C. Bar #429538)
1730 M Street, N.W.
Suite 905
Washington, D.C. 20036
(202) 955-6227
Counsel for Plaintiffs

## **JURY DEMAND**

Plaintiffs, by and through counsel, Brian C. Malone, Esquire, and Mooers & Associates, hereby demands a trial by jury on all issues herein.

                                                  _____
Brian C. Malone